## LAND TITLE & TRUST CO. v. ASPHALT CO. OF AMERICA.

### (Circuit Court, D. New Jersey. August 26, 1902.)

1. CORPORATIONS—FORECLOSURE SUIT—PARTIES.

> In a suit by the trustee therein to foreclose a corporate mortgage, the court is not authorized to permit a bondholder to intervene and be made a party complainant merely for the purpose of litigating questions with a voluntary committee of bondholders formed for the purpose of reorganizing the corporation, since neither such committee nor its members are parties to the suit, nor has the court any power to make them parties for the purpose of controlling their action as a committee or as individuals in respect to such reorganization.

2. SAME—VOLUNTARY SETTLEMENT BY MAJORITY OF BONDHOLDERS—RIGHTS OF MINORITY.

> The fact that a majority of the bondholders of a corporation, through a voluntary committee, may compromise and settle their claims pending a suit for the winding up of a corporation or to foreclose the mortgage, does not prejudice the rights of the minority, who do not assent to such settlement, nor prevent the court, through its receivers, from enforcing for their benefit any rights which the corporation may have against delinquent stockholders or its promoters and directors.

3. SAME—RECEIVERS—SUITS TO ENFORCE LIABILITY OF OFFICERS AND PROMOTERS.

> A court which has appointed receivers for a corporation as an insolvent will not direct them to bring suits to ascertain and enforce the liability of promoters, officers, and directors of the corporation for the benefit of creditors until its visible assets have been liquidated and the fact and amount of deficiency is ascertained.

In Equity. On petition of William C. Bullitt to be allowed to intervene and become a party complainant.

John Douglass Brown, for the motion.

Charles L. Corbin, Joseph S. Auerbach, and Charles C. Deming, opposed.

KIRKPATRICK, District Judge. This petition was presented to me by Mr. Brown some days ago, and he asked me then to make an ex parte order, which I declined to do. I went over with Mr. Brown, in a hurried way, perhaps, the prayers of the bill, and I stated to him, then, the objections I had to granting the petition. They are the same as those which I entertain to-day; and while I have been very much interested in all that Mr. Brown has said, and I do not at this time want to dissent from any of the propositions which he has advanced with regard to the liability of promoters and stockholders, yet, at the same time, in the consideration of this petition, I am obliged to look to the prayers of the petition to ascertain whether it is possible or proper that the relief he asks should be granted.

His first prayer is that he be allowed to intervene in this cause, and

to become a party complainant therein, and to have separate notice of all motions, proceedings, and orders, etc. And the reason he gives for asking to be permitted to intervene is that the Biddle committee is the real party complainant in this suit. I cannot assent to that proposition. The parties to this suit are the Land Title & Trust Company, complainant, and the Asphalt Company of America, defendant. Nothing that has been done or left undone by the Biddle committee, of whom I have no knowledge whatsoever except as I have gleaned from the newspapers, and the information contained in the paper annexed to this petition, can afford any ground for the intervention of anybody as a party complainant. That Mr. Biddle, individually, or as chairman of some committee which was organized voluntarily, as was stated in a former petition in this cause, to reorganize the affairs of this company, filed an affidavit saying that, in his opinion, representing a majority of the certificate holders, Messrs. Tatnall and Mack would make capable receivers, did not in any way make him a party to the suit; and, while it may be true, and probably is, that, under some agreement—this agreement that has been quoted—a majority of the certificate holders had a right to demand that suit should be brought by the Land Title & Trust Company, it does not appear that they ever made any such demand, or took action in any way, except to recommend to the court the appointment of the receivers, or that they had taken any part in this litigation.

I do not know that this court has any authority to make the Biddle committee a party complainant to this litigation without its consent. If they should lose this suit, or anything should be done contrary to what they might set up, they might be mulcted in costs; and the court has no right to put them in a position where they would be compelled to pay costs without their consent. The Biddle committee certainly cannot be made a party defendant to this suit, because they, or Mr. Biddle, at least, resides in the city of Philadelphia, and the only ground upon which this court acquires jurisdiction in this case is diversity of citizenship; and if it should be that while the defendant, the Asphalt Company of America, is a resident of New Jersey, the complainant being a resident of Pennsylvania, Mr. Biddle, who is a resident of Pennsylvania, should be joined as a party defendant, it would be very questionable whether this court had jurisdiction. At any rate, I am of opinion that the Biddle committee is not connected in any way with this suit; that nothing that they have done or failed to do would justify an order permitting this petitioner to intervene.

Now, the second prayer of the bill is that Mr. Biddle and his committee be required to answer, but not under oath, and show cause, if any they have, why any plan of reorganization of the National Asphalt Company should not be postponed until an opportunity has been given the receivers of this court thoroughly to investigate the affairs of that company, and to ascertain the rights of holders of the collateral certificates of the Asphalt Company of America to take steps to enforce such rights by appropriate proceedings, if such proceedings shall seem proper, against the promoters, directors, officers, trustees, and past and present stockholders of the Asphalt Company of America and the National Asphalt Company.

Now, as I have said before, if the Biddle committee are not parties to this suit, as I have held they are not, I have no right to make an order restraining them from doing anything they please. As I understand it, the Biddle committee is a self-constituted committee; they have called on the certificate holders to deposit their certificates with the committee, and, having a majority of the certificates, they propose to make a settlement of all these claims in behalf of anybody who will file his certificate with them; they propose to make a settlement with all these people. Now, if anybody chooses to deposit his securities with the Biddle committee, and permits the Biddle committee to make a settlement of his claims as against either the promoters or subscribers of the stock of this Asphalt Company of America, the court thinks that it ought not to interfere. A settlement that is made between parties themselves is always more satisfactory than a settlement made by the court, and it is a voluntary matter, and I think that an opportunity ought to be given to all who are willing to compromise their claims against anybody they think they have a claim against—an opportunity ought to be given them to do so.

Of course, Mr. Brown has made a very forcible argument in regard to the liability of subscribers to this stock, and the liability of directors and promoters to these companies, and has endeavored to show —has quoted authorities, very much in point, which tend to show— the liability of these people on the lines which he has laid out. Of course, the court does not want at this time to pass upon the liability of subscribers to the stock, or of promoters of the company. If such liability exists, why, it would seem to me that it is at least doubtful if the parties who are liable in that way would be relieved of their liability by any voluntary settlement which other certificate holders might choose to make.

The third prayer is for a restraining order on the Land Title & Trust Company and the directors of the Asphalt Company of America and of the National Asphalt Company, the majority, or the representatives of the majority, of the certificates, from selling or converting any of the securities of the Asphalt Company of America until the rights of the parties have been ascertained. As I said during the course of the argument, the appointment of receivers was to preserve, for the benefit of the certificate holders, these very assets, and it was considered that those rights would be best preserved by keeping them intact and keeping the concern a going concern, and that was the view that was presented to the court by the Land Title & Trust Company, and also by the defendant, the Asphalt Company of America; and under those circumstances I do not think there is any danger that the parties to this suit, having come into court and asked that receivers be appointed to take charge of this property in order to preserve it for the benefit of the shareholders, would undertake, without the consent of the receivers, and without the consent of the court, to make any disposition of the assets.

The fourth prayer is that the Land Title & Trust Company be ordered to file a list of the names and addresses of the registered holders of the collateral gold certificates of the Asphalt Company of America, issued by it under the agreement of July 15, 1899. I do not

know what advantage that would be to anybody; it has not been touched upon in the argument, and I do not know the object of the prayer. At any rate, it is so immaterial that it need not be discussed.

The fifth prayer asks that the receivers be directed to bring these suits to ascertain · the liability of the promoters, directors, officers, trustees, etc., of the Asphalt Company of America and the National Asphalt Company by appropriate litigation. As to that, as I have said several times before, I do not think that this litigation can be closed or these receivers discharged until a settlement has been made of all the assets of the concern. If, as I have intimated, a settlement should be made by the Biddle committee, representing a large portion of these assets, the court will not interfere with it; on the contrary, opportunity will be given them to make such a settlement. If Mr. Bullitt and those who are associated with him are not satisfied with that settlement, and come into court and represent that there are still these uncollected assets, the court would be willing that an opportunity be given them, in the name of the receivers, to prosecute those suits and ascertain those liabilities. A suit for unpaid subscriptions to stock, as I understand the law in New Jersey, could not be successfully maintained against the subscribers until all of the visible assets had been liquidated; and the reason of that, as I recollect, is that the subscribers are only liable for such deficiency as may exist to meet the payment of all of the liabilities of the company, and, until the measure of that liability is ascertained, no suit could be successfully prosecuted and no judgment could be rendered; and therefore it would seem to me that, under those circumstances, it would be useless at this time to direct the receivers to proceed with any suits looking to the collection of a deficiency, which deficiency is as yet uncertain and unascertained.

I cannot see that the interests of this petitioner will be in any way jeopardized by the refusal of the court to permit him to intervene in this suit. The receivers are perfectly competent to manage the business, and if the efforts of the Biddle committee should be successful, and any large majority of certificate holders are willing to compromise their claims on a basis which they consider entirely satisfactory to themselves, the rights of this petitioner, if he did not assent, would still be preserved.

For these reasons, I decline to entertain the petition to make Mr. Bullitt a party to this suit.